1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARY ALLEN T.,**[1] | )    **NO. EDCV 19-1066-KS** |
|         **Plaintiff,** | ) |
|     **v.** | ) |
| | ) |
| | )    **MEMORANDUM OPINION AND ORDER** |
| **ANDREW M. SAUL**, **Commissioner** | ) |
| **of Social Security,** | ) |
|         **Defendant.** | ) |
| _____ | ) |

## INTRODUCTION

Plaintiff filed a Complaint on June 11, 2019, seeking review of the denial of his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. (Dkt. No. 1.) On May 22, 2020, the parties filed a Joint Stipulation. (Dkt. No. 17 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision with an award of disability benefits or with a remand for further proceedings. (Joint Stip. at 39.) The

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the matter be remanded for further administrative proceedings.  (*Id.* at 39-40.)

On June 22, 2020, United States Magistrate Judge Karen L. Stevenson issued a Report and Recommendation (Dkt. No. 19), findings and analysis of which are set forth below in the body of this Memorandum Opinion and Order.  On June 25, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (Dkt. Nos. 8, 20, 21.)  In light of the parties' consent, IT IS HEREBY ORDERED that the Court's June 22, 2020 Report and Recommendation is VACATED and the following Memorandum Opinion and Order reflects the judgment of the Court.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 13, 2017, Plaintiff filed an application for SSI.  (Administrative Record ("AR") 18, 225-33.)  Plaintiff alleged disability beginning on April 1, 2017 because of attention deficient disorder, a mental impairment, dyslexia, and hernia repair surgery.  (AR 106-07, 115-16.)[2]  After the Commissioner denied Plaintiff's application initially (AR 114) and on reconsideration (AR 127), Plaintiff requested a hearing (AR 139-41).

At a hearing held on February 27, 2018, at which Plaintiff waived his right to counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE").  (AR 45-65.)  At a supplemental hearing held on January 11, 2019, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a VE.  (AR 66-105.)  On February 19, 2019, the ALJ issued an unfavorable decision denying Plaintiff's application for

---

[2]     Plaintiff was 54 years old on his alleged disability onset date (AR 32) and thus met the agency's definition of a person closely approaching advanced age.  *See* 20 C.F.R. § 416.963(d).

SSI.  (AR 18-33.)  On April 11, 2019, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ made the following findings.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of April 13, 2017.  (AR 20.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "history of hernia repair; attention deficient hyperactivity disorder (ADHD); borderline intellectual functioning (BIF); depressive disorder, stimulant use disorder in remission and history of polysubstance abuse dependence."  (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  (AR 21.)  The ALJ then determined that Plaintiff had the residual functional capacity to perform "medium work" except with a limitation to "simple routine tasks" and with the possibility that he "may experience off task behavior less than 10% of an 8-hour workday."  (AR 22.)  At step four, the ALJ found that Plaintiff had no past relevant work.  (AR 32.)  At step five, the ALJ relied on the VE's testimony to find that Plaintiff could perform other work in the national economy, in the occupations of hospital cleaner, laundry laborer, and industrial cleaner.  (AR 33.)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than

a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

\\\
\\\
\\
\\\

4

**DISCUSSION**

The parties raise three disputed issues:  (1) whether the ALJ properly evaluated the medical opinion evidence in determining Plaintiff's residual functional capacity ("RFC"); (2) whether the ALJ properly evaluated Plaintiff's subjective statements and allegations; and (3) whether the ALJ relied on a flawed hypothetical question to the vocational expert.  (Joint Stip. at 3.)

## I.   The ALJ's Evaluation Of The Medical Opinion Evidence (Issue One).

In Issue One, Plaintiff claims that the ALJ failed to properly evaluate the medical opinions or prior administrative findings of three physicians in assessing Plaintiff's residual functional capacity.  (Joint Stip. at 3-12.)

### A.   Legal Standard.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The Ninth Circuit previously has required that, in order to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence."  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014).  Alternatively,

5

1    "[i]f a treating or examining doctor's opinion *is* contradicted by another doctor's opinion, an

2    ALJ may only reject it by providing specific and legitimate reasons that are supported by

3    substantial evidence." *Trevizo*, 871 F.3d at 675 (emphasis added).  The Ninth Circuit held that

4    an ALJ "can meet this burden by setting out a detailed and thorough summary of the facts and

5    conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

6    (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

7

8           However, for disability applications filed on or after March 27, 2017, the Commissioner

9    revised the rules for the evaluation of medical evidence at the administrative level.  *See*

10   Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan.

11   18, 2017).  Because Plaintiff filed his SSI application on April 13, 2017 (AR 18, 225-33), it is

12   subject to the revised rules.   It remains to be seen whether the new regulations will

13   meaningfully change how the Ninth Circuit determines the adequacy of the an ALJ's reasoning

14   and whether the Ninth Circuit will continue to require that an ALJ provide "clear and

15   convincing" or "specific and legitimate reasons" in the analysis of medical opinions, or some

16   variation of those standards.  *See Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233,

17   at *3 (W.D. Wash. Apr. 9, 2020).  Nevertheless, the Court is mindful that it must defer to the

18   new regulations, even where they conflict with prior judicial precedent, unless the prior

19   judicial construction "follows from the unambiguous terms of the statute and thus leaves no

20   room for agency discretion."  *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*,

21   545 U.S. 967, 981-82 (2005); *see, e.g.*, *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993)

22   ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded

23   the Secretary's authority [or] are arbitrary and capricious.'").

24

25          The revised rules provide that adjudicators for the Social Security Administration,

26   including ALJs, evaluate medical opinions according to the following factors:  supportability;

27   consistency; relationship with the claimant; specialization; and other factors such as the

28   medical source's familiarity with other evidence in the record or with disability program

6

requirements.   20 C.F.R. § 416.920c(c)(1)-(5).   The most important of these factors are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations.  20 C.F.R. § 416.920c(c)(1).   Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves.  20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).   The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis.  20 C.F.R. § 416.920c(b)(1).

## B.    Dr. Pequeno.

Dr. Pequeno, a psychiatrist, began treating Plaintiff in August 2017.  (AR 554.)  In July 2018, Dr. Pequeno completed a questionnaire assessing Plaintiff's mental functioning based on a diagnosis of major depression, recurrent and severe.  (AR 554-58.)  In pertinent part, Dr. Pequeno wrote that Plaintiff:   displayed several mental symptoms (AR 555); would have several "marked" limitations in mental functioning in a full-time work environment (AR 557); and would be absent from work more than three times per month because of his impairments or treatment (AR 558).

The ALJ stated that Dr. Pequeno's opinion was "not supported or consistent with the medical evidence of record or [Plaintiff's] reported activities of daily living" and "unsupported by [Dr. Pequeno's] own treatment notes."  (AR 31.)  As examples, the ALJ cited evidence of multiple examinations in which Plaintiff reported "feeling alright" or "feeling pretty good"; multiple  examinations  that  were  "essentially  within  normal  limits  after  [Plaintiff]  was

7

prescribed proper medications"; and the absence of "independent observations or notes that would support this extremely limiting opinion." (*Id.*) Thus, the ALJ found Dr. Pequeno's opinion to be "less persuasive" than other opinions in the record. (*Id.*)

The ALJ's evaluation of Dr. Pequeno's opinion was free of legal error. The ALJ applied the appropriate legal standard, as set out in 20 C.F.R. § 416.920c, by considering Dr. Pequeno's opinion under the listed factors and articulating the most important factors of supportability and consistency. (AR 31.) Although Plaintiff contends that the ALJ's articulation was insufficient (Joint Stip. at 10), the Court disagrees. The ALJ's reasoning was traceable to the ALJ's explicit discussion of the factors of supportability and consistency of Dr. Pequeno's opinion. (AR 31.) Further, although Plaintiff contends that the ALJ should have accounted for other factors such as Dr. Pequeno's treatment relationship and specialization (Joint Stip. at 11), the revised rules required that the ALJ only consider those factors, not articulate her rationale concerning them. *See* 20 C.F.R. § 416.920c(b)(2); *see also* 82 Fed. Reg. 5844-01, 5855 ("[T]he use of the term 'consider' is consistent with our current rules, and it is easily distinguishable from the articulation requirements.") (footnote omitted). Thus, the ALJ's articulation of her consideration of Dr. Pequeno's opinion was not erroneous.

The ALJ's evaluation of Dr. Pequeno's opinion also was supported by substantial evidence. As the ALJ found (AR 31), the record demonstrated that Plaintiff had a somewhat normal level of activity (AR 248-50); that he stated he was "feeling alright" or "feeling pretty good" (AR 509-10); that mental status examinations were within normal limits (AR 560-64, 568); and that treatment records contained no independent observations or notes that would support Dr. Pequeno's extremely limiting opinion.

Plaintiff's challenges to evidence for each of these findings do not warrant a different result. Although Plaintiff contends that evidence of his activities and own statements did not undermine Dr. Pequeno's opinion (Joint Stip. at 8, 9), the ALJ reasonably found that they did:

under the revised rules, Plaintiff's activities (AR 248-50) and statements about feeling "alright" or "pretty good" (AR 509-10) were evidence from a non-medical source (*i.e.*, Plaintiff himself) that was inconsistent with Dr. Pequeno's opinion that Plaintiff frequently experienced a low mood, anhedonia, poor concentration, and feelings of isolation (AR 556). *See* 20 C.F.R. §§ 416.902(j)(1), 416.920c(c)(2).

Moreover, although Plaintiff disputes the ALJ's finding that his examinations were within normal limits, the evidence from the treatment record that Plaintiff cites for abnormalities (Joint Stip. at 6 [citing AR 335, 425, 429, 507]) either pre-dated or coincided with the beginning of Dr. Pequeno's treatment, which was effective.  After regular treatment and medication, Plaintiff's examinations repeatedly were within normal limits, consistent with the ALJ's finding.  (AR 560-64, 568.)

Finally, although Plaintiff disputes the ALJ's finding that Dr. Pequeno failed to make independent observations, by arguing that psychiatric impairments are not readily amenable to objective testing (Joint Stip. at 7), this argument does not properly account for the Commissioner's rules.  The revised rules emphasize the need for "objective medical evidence" of a mental impairment, such as signs of "psychological abnormalities that can be observed, apart from [the claimant's] statements." 20 C.F.R. § 416.902(l); *see also* 82 Fed. Reg. 5844-01, 5848 (mental impairments must be substantiated by objective medical evidence consisting of signs or psychological test results).  Dr. Pequeno's own treatment records substantially supported the ALJ's finding that Plaintiff, with regular treatment and medication, displayed almost no objective signs of observable psychological abnormalities.  (AR 560-64, 568.)  In sum, reversal is not warranted based on the ALJ's evaluation of Dr. Pequeno's opinion.

## C.    Dr. Nash.

Dr. Nash, a psychologist, examined Plaintiff twice.  (AR 361-68, 513-21.)  In the first

examination, in March 2016, Dr. Nash diagnosed a history of attention deficit hyperactivity disorder, substance abuse/dependence, learning issues, and a history of antisocial behavior. (AR 365.)  Dr. Nash stated that Plaintiff was likely or possibly impaired in areas of mental functioning such as understanding, attention, concentration, carrying out simple and complex instructions, and interacting with others.  (AR 366.)  In the second examination, in April 2018, Dr. Nash diagnosed a history of attention deficit hyperactivity disorder, dyslexia, and substance abuse/dependence.  (AR 518.)  Dr. Nash stated that Plaintiff was impaired in areas of mental functioning such as understanding, attention, concentration, as evidenced by psychometric testing.  (AR 518-19.)

After summarizing Dr. Nash's opinions in detail (AR 29-30), the ALJ articulated her findings in a single analysis:

> The undersigned has considered the opinions of Dr. Nash and finds that they are consistent with the above residual functional capacity above.  Dr. Nash's opinion is consistent with other medical evidence of record, [Plaintiff's] reported activities of daily living and supported by psychometric testing.  As a specialist for the Social Security Administration, Dr. Nash is well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended.

(AR 30.)  The ALJ also found that Dr. Nash's opinions were more persuasive than Dr. Pequeno's opinion.  (AR 31.)

Plaintiff contends that the ALJ erred in her evaluation of Dr. Nash's opinions for multiple reasons.  First, Plaintiff contends that the ALJ failed to articulate how persuasive Dr. Nash's opinions were.  (Joint Stip. at 11.)  To the contrary, it is evident from the ALJ's discussion that the ALJ found Dr. Nash's opinions to be persuasive: the ALJ summarized Dr.

Nash's opinions in extensive detail (AR 29-30); explained how the opinions were with consistent with and supported by the record (AR 30); and explained that Dr. Nash's opinions were more persuasive than Dr. Pequeno's opinion (AR 31).

Second, Plaintiff contends that the ALJ failed to articulate the most important factors of consistency and supportability. (Joint Stip. at 11.) To the contrary, the ALJ considered and articulated both factors. For consistency (*i.e.*, the extent to which the opinions were consistent with evidence from other medical sources and nonmedical sources), the ALJ explained that Dr. Nash's opinions were consistent with other medical evidence of record and Plaintiff's activities of daily living. (AR 30; *see also* AR 514, 560-64, 568.) For supportability (*i.e.*, the extent to which the opinions were supported by relevant objective medical evidence and the source's supporting explanation), the ALJ explained that Dr. Nash's opinions were supported by objective medical evidence from psychometric testing. (AR 30; *see also* AR 517-18.) The ALJ's consideration and articulation of these two factors was not erroneous.

Finally, Plaintiff contends that the ALJ erred by failing to account for Dr. Nash's first opinion from March 2016. (Joint Stip. at 11-12.) At that time, Dr. Nash found that Plaintiff was impaired in carrying out simple instructions. (AR 366.) The ALJ, however, found no such impairment in assessing Plaintiff's residual functional capacity. (AR 22.) Contrary to Plaintiff's contention, the ALJ did not err by failing to explain why she did not incorporate Dr. Nash's March 2016 finding. Dr. Nash's finding had limited relevance because it was from March 2016 (AR 366), more than one year before Plaintiff's alleged disability onset date of disability of April 1, 2017 (AR 225). *See Carmickle v. Commissioner*, *Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.") (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)). Moreover, the ALJ articulated her consideration of Dr. Nash's March 2016 and April 2018 opinions collectively in a single analysis, which was permitted by the revised rules. *See* 20 C.F.R. § 416.920c(b)(1). Given the scope of the ALJ's articulation duty under the revised

11

rules, the ALJ did not err in failing to single out and articulate an analysis of a minimally relevant statement by Dr. Nash from March 2016 about Plaintiff's ability to carry out simple instructions. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative[.]") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); *see also* 82 Fed. Reg. 5844-01, 5858 ("We consider all evidence we receive, but we have a reasonable articulation standard for determination and decisions that does not require written analysis about how we considered each piece of evidence."). In sum, reversal is not warranted based on the ALJ's allegedly erroneous analysis of Dr. Nash's opinions.

## D.  Dr. Flocks.

Dr. Flocks, a state agency physician, reviewed Plaintiff's medical record and concluded that Plaintiff's mental impairment, if any, was "non-severe." (AR 122-23.) The ALJ stated that this opinion was "persuasive," with little further analysis, other than an acknowledgment that Dr. Flocks was well-versed in Social Security standards. (AR 31.) However, the ALJ ultimately found that Plaintiff had mental limitations (AR 22), while Dr. Flocks found none.

Plaintiff contends that the ALJ erred by failing to explain why her opinion about Plaintiff's mental limitations differed from that of Dr. Flocks. (Joint Stip. at 12.) However, Plaintiff has not shown how he was prejudiced by the brief analysis the ALJ in fact provided. The ALJ's eventual residual functional capacity assessment was more generous than Dr. Flocks's opinion, so that any further analysis of Dr. Flocks's opinion could not have altered the ALJ's RFC assessment in Plaintiff's favor. Thus, any legal error in the ALJ's analysis would have been "inconsequential to the ultimate nondisability determination," and, therefore, harmless. *See Brown-Hunter*, 806 F.3d at 492. Accordingly, reversal is not warranted because of the ALJ's allegedly erroneous analysis of Dr. Flocks's statement.

12

**II.    The ALJ's Assessment of Plaintiff's Subjective Complaints (Issue Two).**

In Issue Two, Plaintiff claims that the ALJ did not properly assess his subjective statements and allegations.  (Joint Stip. at 30-32.)

**A.    Legal Standard.**

An ALJ must make two findings in assessing a claimant's pain or symptom allegations. *Treichler v. Commissioner of Social Sec. Admin*., 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record.  *Id*.; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Beginning on March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims.  *See* SSR 16-3P, 2017 WL 5180304, at *1.  Because the ALJ's decision in this case

was issued on February 19, 2019, it is governed by SSR 16-3P.  *See id*. at \*13 and n.27.  In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character."  SSR 16-3P, 2017 WL 5180304, at \*2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).  These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR16-3P.  *See Trevizo*, 871 F.3d at 678 n.5.

### B.    Background.

During the administrative hearings, Plaintiff testified as follows about his mental condition.  He cannot work because he "can't keep focused on anything," his spelling and math are poor, and he's "basically dyslexic."  (AR 57, 80.)  His reading comprehension also is poor.  (AR 80.)  He has "constant racing" of thoughts.  (*Id*.)  Maintaining focus and concentration is a constant struggle.  (AR 80-81.)  It is difficult for him to stay off Ritalin, but Wellbutrin helps with his depression to some degree.  (AR 79.)  Although he has a history of homelessness, he lives at a Christian ministry facility.  (AR 53, 83-84.)  He has remained sober while living there and needs the facility to structure his time and activities.  (AR 85.)

Plaintiff also testified about physical problems.  He cannot work because the center of his back is "messed up."  (AR 58.)  He used to lift up to 150 pounds at work.  (AR 57.)  Now, he can lift 50 to 60 pounds.  (AR 91.)  He also has chronic obstructive pulmonary disease, but he is not alleging it as a severe impairment.  (AR 92.)

In addition to testifying at the hearing, Plaintiff completed a written function report describing his abilities and activities.  (AR 246-53.)  In pertinent part, Plaintiff wrote that he participates in daily church activities (AR 247); has no apparent problems with personal care except for the need for reminders (AR 247-28); can go out by himself (AR 249); and can shop

and handle money (*id*.)  His hobbies include base-jumping, painting, and drawing.  (AR 250.)  With medication, his mental symptoms become "much better."  (AR 251.)

## C.    Analysis.

The ALJ initially found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (AR 22.)  However, the ALJ next found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (AR 22-23.)  As support, the ALJ stated two reasons.  (AR 23-24, 29.)

### 1.    Daily Activities.

The ALJ first found that Plaintiff "has described daily activities that are inconsistent with his allegations of disabling symptoms and limitations, which weakens his reliability."  (AR 23-24; *see also* AR 29.)  It is well-settled that an ALJ may find that a claimant's allegations about the severity of his symptoms is undermined by evidence of activities demonstrating greater functional ability than the claimant alleged.  *See, e.g., Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010); *Molina*, 674 F.3d at 1113; *Valentine*, 574 F.3d at 693; *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ discussed Plaintiff's activities, as taken from his written function report, in extensive detail as follows.  (AR 29; *see also* AR 246-53.)  Plaintiff "is able to 'pray, go to church, help people, eat, and bathe at the river or the church.'"  (AR 29; *see also* AR 247.)  He is able to "take care of his personal needs" and "prepare his own meals."  (AR 29; *see also* AR 247-48.)  Although he was homeless at the time of his report, he "was able to travel by walking or riding a bicycle," was able to "drive and go out alone," and was able to "shop in stores and

15

pay bills."  (AR 29; *see also* AR 249.)  His ability to handle money had not changed since his illnesses, injuries, or conditions began.  (AR 29; *see also* AR 249.)  He was able to participate in hobbies such as base-jumping ("parachute in your hands and jump off a cliff") and painting. (AR 29; *see also* AR 250.)  Finally, he admitted that "when he is on the right medication, his memory, concentration, understanding and ability to follow instructions were much better." (AR 29; *see also* AR 251.)  Based on this evidence, the ALJ concluded that Plaintiff had "maintained a somewhat normal level of activity and interaction" and that his activities were "consistent with a significant degree of overall functioning."  (AR 29.)

The ALJ reasonably concluded that evidence of Plaintiff's ability to engage in these activities were inconsistent his allegation of disabling symptoms.  The scope of the activities — various church activities, shopping, managing money, and painting (AR 246, 249-50) — was inconsistent with Plaintiff's allegation that maintaining focus and concentration was a constant struggle (AR 80-81).  Likewise, evidence of Plaintiff's hobbies such as base-jumping (AR 250) was inconsistent with his allegation of a significant back problem (AR 58). Moreover, Plaintiff admitted that his mental symptoms, the most significant source of his disability claim, were much better with medication.  (AR 251.)  Although Plaintiff contends that these activities did not clearly show his ability to work full-time (Joint Stip. at 32), this was not the basis for the ALJ's finding.  Rather, the ALJ found that evidence of Plaintiff's activities undermined "his allegations of disabling symptoms and limitations, which weakens his reliability."  (AR 24.)  This was a permissible inference from the evidence of Plaintiff's daily activities.  *See Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment.") (citing *Valentine*, 574 F.3d at 693).  In sum, the ALJ's reason was a clear and convincing reason based on substantial evidence.

\\

\\

16

## 2.     Effectiveness of Treatment.

The ALJ next found that Plaintiff's treatment for his mental impairments and hernia were generally successful and effective.  (AR 24, 29.)  An ALJ may find that a claimant's subjective symptom allegations are undermined by evidence of treatment that has been effective.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that an ALJ reasonably pointed to the claimant's admission that his diabetes was controlled by medication); *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (the ALJ "reasonably noted that the underlying complaints upon which [the claimant's] reports of pain were predicated had come under control"); *see also Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).

Here, the ALJ again found that, according to Plaintiff's own written report, "when he is on the right medication, his memory concentration, understanding and ability to follow instructions were much better."  (AR 24, 29; *see also* AR 251.)  Relatedly, the ALJ stated that "surgery was generally successful in relieving the symptoms" from Plaintiff's hernia.  (AR 24, 29; *see also* AR 378.)

The ALJ's findings were based on permissible inferences from evidence of Plaintiff's treatment. As for Plaintiff's mental impairments, the ALJ reasonably found that Plaintiff admitted his symptoms were much better with medication.  (AR 251.)  Although Plaintiff contends that his response to treatment was "modest"  (Joint Stip. at 32), substantial evidence in the record demonstrated it was more than modest.  The record consistently showed that, with sobriety and regular use of medication, Plaintiff's mental status examinations repeatedly were within normal limits.  (AR 560-64, 568.)  And as for Plaintiff's physical impairment, the

17

1  record showed that Plaintiff underwent a right inguinal hernia repair with an unremarkable
2  hospital stay (AR 378) and showed no evidence of further symptoms.   In sum, the ALJ
3  provided a clear and convincing reason based on substantial evidence to discount Plaintiff's
4  allegations about his mental and physical symptoms.

6  **III.   The ALJ's Formulation of the Hypothetical Question (Issue Three).**

8       In Issue Three, Plaintiff claims that the ALJ erred in formulating a hypothetical question
9  to the vocational expert.  (Joint Stip. at 35-37.)

11      **A.   Legal Standard.**

13       "Once a claimant shows that [he] cannot perform past relevant work, the burden shifts
14  to the [Commissioner] to show that the claimant can engage in other substantial activity."
15  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (citation omitted).  "The [Commissioner]
16  can meet this burden by propounding to a vocational expert a hypothetical that reflects all the
17  claimant's limitations."  *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).
18  Like the RFC assessment, the ALJ's hypothetical question must accurately reflect all of the
19  claimant's limitations.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) ("However,
20  if an ALJ's hypothetical is based on a residual functional capacity assessment that does not
21  include some of the claimant's limitations, the vocational expert's testimony 'has no
22  evidentiary value.'") (quoting *Carmickle*, 533 F.3d at 1166).  Where the hypothetical posed to
23  the VE about the claimant's RFC does not include all of the claimant's limitations that are
24  supported by substantial evidence in the record, the VE's testimony cannot constitute
25  substantial evidence to support the ALJ's findings regarding the claimant's ability to work.
26  *See Taylor v. Commissioner*, 659 F.3d 1228, 1235 (9th Cir. 2011); *Palomares v. Astrue*, 887
27  F. Supp.2d 906, 919 (N.D. Cal. 2012); *Brinks v. Comm'r SSA*, 343 Fed. Appx. 211, 212 (9th
28  Cir. 2009).

1

2

### B.    Analysis.

3

Both the ALJ's hypothetical question to the vocational expert and the RFC assessment contemplated a person who is limited to "simple routine tasks" and who "may experience off task behavior less than 10% of an 8-hour workday."  (AR 22, 92-93.)  The hypothetical question and RFC assessment did not incorporate an earlier finding by the ALJ, at step three of the five-step evaluation, that Plaintiff had a "moderate" limitation in "understanding, remembering, or applying information."  (AR 21.)  The ALJ made this finding under the "paragraph B" criteria for determining, at step three, that Plaintiff's mental impairments did not meet or equal the requirements of a listed mental impairment and based that opinion on Dr. Nash's opinion that Plaintiff "had moderate limitations in the ability to understand *complex* instructions, carry out *complex* instructions, and moderately limited in the ability to make judgments on *complex* work-related decisions."  (AR 21) (emphasis added).  Plaintiff claims that the ALJ's omission of this "moderate" finding from the subsequent hypothetical question to the vocational expert was erroneous.  (Joint Stip. at 36-37.)[3]

16

17

The ALJ did not err in formulating a hypothetical question that omitted the ALJ's earlier finding about Plaintiff's moderate limitation in understanding, remembering, or applying information.  The ALJ's assessment of moderate limitations in understanding, remembering, or applying information was, by its own terms, an assessment of a limitation on Plaintiff's ability to carry out certain *complex* tasks, not a limitation on Plaintiff's ability to perform "simple routine tasks."  Therefore the assessment of a moderate limitation on understanding, remembering, or applying information at step three is consistent, as opposed to in conflict,

24

25

26

---

[3]    Plaintiff points to an additional finding of limitation, in the area of concentration, persistence, or pace (Joint Stip. at 36), but misstates the ALJ's finding as "moderate" when in fact it was "mild."  (AR 21.)  The Court's conclusion that the ALJ complied with her duty to analyze a "moderate" limitation applies just as well to a "mild" limitation.

with the ALJ's hypothetical and RFC determination, both of which limited Plaintiff to "simple routine tasks."

Further, the ALJ expressly acknowledged that this finding was limited to steps two and three of the five-step evaluation.  (AR 22.)  This was consistent with the Commissioner's own rulings.  *See* Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").  Thus, the ALJ was not required to carry over her own finding from steps two and three to the hypothetical question for steps four and five.  *See Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (holding that an ALJ was not required to include his own step three finding about a moderate difficulty in concentration, persistence, or pace in the vocational hypothetical at steps four and five).

In sum, Plaintiff has not shown that, in limiting Plaintiff to "simple routine tasks," the ALJ omitted her earlier assessment of moderate limitations in Plaintiff's ability to perform certain complex tasks.  Plaintiff has also not established that, if the ALJ did omit her earlier assessment of moderate limitations from the hypothetical and ultimate RFC determination, the omission would constitute prejudicial error given the assessment of a limitation to "simple routine tasks."  Accordingly, reversal is not warranted on this basis.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of

the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: June 29, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE